UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SAMUEL LEWIS TAYLOR,       )
                          )
        Plaintiff,         )
                          )
v.                        )     Case No. 4:15 CV 285 RWS
                          )
MICHAEL MILLER, et al.,      )
                          )
        Defendants.    )

## MEMORANDUM AND ORDER

Pro se plaintiff Samuel Lewis Taylor, an inmate at the Crossroads Correctional Center, brings First Amendment retaliation claims under 42 U.S.C. § 1983 for alleged retaliation taken against him in 2012 and 2013 when he was incarcerated at the Potosi Correctional Center. Taylor claims defendants Michael Miller, Jason Crawford, Dorine Johnson, Carl Gravett, and Stanley Pruett, employees of the Missouri Department of Corrections (MDOC) assigned to Potosi, retaliated against him for filing a lawsuit against defendant Miller. Defendants move for summary judgment, arguing Taylor has failed to exhaust his administrative remedies and failed to provide evidence of adverse action or retaliatory motive. Taylor opposes the motion. For the reasons that follow, I will grant defendants' motion for summary judgment.

## Legal Standard

In ruling on a motion for summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c)(1), (e). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, summary judgment is appropriate. Pedersen v. Bio-Med. Applications of Minn., 775 F.3d 1049, 1053 (8th Cir. 2015). Although a district court must view the facts in the light most favorable to the non-moving party, it is not required to "accept unreasonable inferences or sheer speculation as fact." Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir.2004).

## Factual Background

Defendants submitted a statement of uncontroverted material facts in support of their motion along with a number of exhibits. Taylor filed an affidavit statement of facts in response, signed under penalty of perjury, in which he admits

defendants' statements of fact in paragraphs 1–8 but states generally that paragraphs "from 9 throughout Affiant are controverted." Aff. Statement ¶ 1, ECF No. 27. Taylor's statement of facts includes 21 pages of additional facts but does not specifically controvert defendants' facts, as required by Local Rule 4.01(E). As a result, unless otherwise noted, Taylor is deemed to have admitted the facts in defendants' statement. <u>See</u> Local Rule 4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."); <u>see also</u> <u>Cross v. MHM Corr. Servs., Inc.</u>, 2014 WL 5385113, at *2 (E.D. Mo. Oct. 10, 2014) ("Plaintiffs' pro se status does not excuse them from . . . complying with Local Rule 4.01(E)."). This does not apply to legal conclusions presented as facts in defendants' statement.

Taylor also filed a declaration, signed under penalty of perjury, as well as 62 exhibits. Defendants filed a reply to Taylor's statement of controverted material facts and Taylor filed a surreply, attaching more exhibits. After considering these materials, and with the summary judgment standard in mind, I accept the following facts as undisputed except where indicated.

Defendant Miller served as a Correction Classification Assistant and Corrections Case Manager during the time of Taylor's allegations. Doc. 23 ¶¶ 15–16. Defendant Crawford was the Property Room Sergeant. <u>Id.</u> ¶ 67. Defendants

Johnson and Gravett were Corrections Officers, and defendant Pruett was a Corrections Casework Manager. Id. ¶¶ 4–6.

On September 26, 2011, Taylor filed a lawsuit against Miller and other defendants not named in this suit. See Taylor v. Miller, Case No. 1:11 CV 174 SNLJ (E.D. Mo.). On May 16, 2012, Pruett notarized Taylor's signature on a settlement agreement in another case, Taylor v. Combs, Case No. 2:07 CV 4060 NKL (W.D. Mo.). Doc. 27 and Doc. 38 ¶ 4. Taylor alleges Pruett must have told Miller about the settlement, which led Miller to retaliate against him and direct other officials to retaliate against him to dissuade him from continuing his lawsuit against Miller. Doc. 26 at 5. Taylor claims the retaliation began in August 2012 and included the following incidents:

- In August 2012, Taylor was assigned to Housing Unit 3. Doc. 23 ¶ 12. On August 13, 2012, Jason Lee, a corrections officer in Housing Unit 3 and a nonparty to this suit, confiscated Taylor's television. Doc. 23 ¶ 18. Taylor testified that Lee told Taylor that classification staff instructed him to confiscate the television, so Taylor believes that because Miller was in classification, Miller told Lee to take the television. Id. ¶ 19; Doc. 23–1, Ex. A, 14:10–15:7; Doc. 27 ¶ 8. Miller was assigned to Housing Unit 4 at the time. Doc. 23 ¶ 15. Lee did not mention the lawsuit. Doc. 23–1 at 15:18–21. Taylor claims the television was taken to Crawford in the property room and Taylor was told his television was confiscated because his property list showed he had two televisions when he was only permitted to have one. See id. 23:5–17; Doc. 31–2, Exs. 13–14. Taylor claims this was error because his previous television had been damaged and confiscated and should have been removed from his property list. Doc. 27 ¶¶ 5, 8. Taylor got his television back within a few weeks. Doc. 23–1 at 13; Doc. 27 ¶ 9.

- On August 14, 2012, Taylor alleges Crawford confiscated his Koss headphones. Doc. 23 ¶ 20; Doc. 27 ¶ 10. Taylor claims the headphones were taken at Miller's direction, in retaliation for the lawsuit against him. Taylor claims Crawford told Taylor that classification instructed him to confiscate the headphones, but Crawford did not say who gave him the directive. Doc. 23 ¶ 21; Doc. 27 ¶ 10. Taylor asserts "[i]t would stand to reason that Miller directed Crawford to confiscate Koss Headphones as Crawford and Miller admitted knowing each other." Doc. 27 ¶ 10. Prison officials had mistakenly engraved Taylor's headphones with another inmate's number. Doc. 23 ¶ 23; Doc. 31–2, Ex. 17. The headphones were confiscated and corrected, and in September 2012, Taylor agreed to receive the returned headphones with the mistaken and corrected engraving on them. Doc. 23 ¶ 24; Doc. 27 ¶ 11.

- On October 2, 2012, Taylor claims Gravett searched his cell (3A-26), confiscated some of his legal documents pertaining to Case No. 1:11 CV 174 SNLJ, and damaged his watch. Doc. 23 ¶ 26. Gravett denies removing legal documents from Taylor's cell during a search or damaging his property. Doc. 23 ¶ 28; Doc. 38 ¶ 13. The Potosi cell search log Taylor submitted does not show cell 3A-26 was searched on October 2, 2012. Doc. 27 ¶12; Doc. 31–2, Ex. 19.

- On October 29, 2012, Taylor alleges Gravett and Johnson searched his cell (3B-29). Taylor claims Johnson intentionally dropped and broke his typewriter and the defendants took seventy 46-cent stamps during the search to impede Taylor's lawsuit against Miller. Doc. 9 at 8; Doc. 23 ¶ 39. Taylor claims he saw Johnson speaking with Miller's wife, also a Potosi employee, a couple of days before Johnson and Gravett searched his cell. Doc. 22 at 12 n.1; Doc. 23 ¶ 50–51. He believes this shows that the cell search was done at the direction of Miller or his wife. Doc. 23–1 at 41–42.

- Taylor filed an Informal Resolution Request (IRR) reporting his typewriter damaged. During the discussion of the IRR, Taylor alleges Pruett ordered

him to bring his typewriter to the classification office for confiscation and that he has not seen the typewriter again. He also claims Miller was present when he delivered the typewriter. Doc. 9 at 9; Doc. 23 ¶ 52.

- On December 7, 2012, Taylor alleges Gravett called Taylor out of his cell to report to the canteen, where another staff member issued Taylor two conduct violations. Doc. 23 ¶ 55. As a result of the conduct violations, Taylor was confined to administrative segregation. Doc. 9 at 10; Doc. 23 ¶ 64–65. According to prison records, these events occurred around and after 12:55 pm on December 7, 2012. Doc 23 ¶ 58; Doc. 23–14 at 13, Ex. M. Taylor was in Housing Unit 3. Doc. 23 ¶ 60. On December 7, 2012, Gravett was working first shift (11 pm to 7 am) in Housing Unit 4 and left the facility at 7:30 am, after his scheduled shift. Id. ¶¶ 61–62. Taylor also claims his cellmate told him Gravett had another prisoner pack up Taylor's personal property and allowed the prisoner to steal some of it, though it is unclear when this alleged incident occurred.

- Taylor alleges he was released from administrative segregation in January 2013. Doc. 9 at 11. He claims his crockpot and 49ers coat were confiscated from his cell while he was in administrative segregation.[1] Doc. 23 ¶ 63. Taylor filed an IRR, and the response explained that an offender is not permitted to retain "grandfathered" items per MDOC policy if he commits a violation that results in assignment to administrative segregation. Id. ¶ 69–71; Doc. 23–15 Ex. N; PCC SOP/IS22-1.1, Offender Property Control Procedures; Doc. 23–16 Ex. O. Taylor gave Crawford, the property room sergeant, postage to mail out the crockpot and coat, but he alleges he was not allowed to send these items out per MDOC policy. Docs. 27 and 38 ¶ 47; see Doc. 23 ¶ 67. Taylor also alleges Crawford refused to allow him to send his typewriter out for repairs. Doc. 27 ¶ 30; Doc. 38 ¶ 30–31.

- Taylor claims that in either January or March 2013, he asked Miller to send him to clothing issue to replace his winter coat that had been confiscated, but

---

[1] In his complaint, Taylor also alleged that some typing ribbons were confiscated while he was in administrative segregation, but he does not follow up on this claim in his briefing or fact statements with any cogent support.

Miller denied the request.  Doc. 9 at 12; Doc. 27 ¶ 49.  On March 18, 2013, Johnson issued Taylor a conduct violation for disobeying an order by wearing a sweatshirt under state-issued clothing.  Doc. 23 ¶ 72.  Taylor was found guilty of the conduct violation.  Id. ¶ 73.

On February 12, 2015, Taylor filed this suit, and on March 25, 2015, and June 17, 2015, he filed amended complaints.  On preliminary review, I dismissed all of Taylor's claims except his First Amendment retaliation claims against the defendants in their individual capacities.  See Mem. & Order, ECF No. 11; 28 U.S.C. § 1915(e)(2)(B).  Defendants now move for summary judgment, arguing Taylor failed to exhaust administrative remedies and failed to provide affirmative evidence they took adverse actions against him or acted with a retaliatory motive.[2]

## Standard: Exhaustion

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory under the PLRA.  Ross v. Blake, 136 S.Ct. 1850, 1856 (2016).  If an inmate fails to exhaust before filing suit in federal court, unexhausted claims must be dismissed.  Johnson v. Jones, 340 F.3d 624, 627

[2] Defendants also briefly argue they are entitled to qualified immunity.  Because I conclude that the facts, viewed in the light most favorable to Taylor, do not demonstrate a violation of his constitutional rights, I would also find defendants are entitled to qualified immunity on Taylor's claims for money damages.  See Pearson v. Callahan, 555 U.S. 223, 232 (2009).

(8th Cir. 2003). The PLRA contains one textual exception to mandatory exhaustion: availability, meaning an inmate is only required to exhaust administrative remedies that are actually available to him. Ross, 136 S.Ct. at 1858. "[T]he PLRA exhaustion requirement requires proper exhaustion," Woodford v. Ngo, 548 U.S. 81, 93 (2006), which "demands compliance with an agency's deadlines and other critical procedural rules[.]" Id. at 90.

Defendants provided a certified copy of MDOC's Offender Grievance policy, D5–3.2. See Doc. 23–10, Ex. I. The policy outlines three stages prisoners must go through to exhaust the grievance process. First, they must file an Informal Resolution Request (IRR), which is used to attempt to resolve the complaint through communication between the prisoner and appropriate staff. See id. at 3, 10. If the prisoner is not satisfied and wishes to continue to pursue the complaint, he must file an Offender Grievance form. Staff members investigate the complaint and prepare a response, which the prisoner reviews with staff. See id. at 15–18. If the prisoner is still not satisfied, he may appeal the grievance response. See id. at 18–19. Once the appeal is resolved, the prisoner has exhausted his administrative remedies on that complaint. See id. at 19. The prisoner may indicate at any step that the results are satisfactory, resolving the complaint. If the prisoner fails to take the next step in the process within the time frame set out by the policy, the complaint is generally considered abandoned. See id. at 15, 18.

## Standard: Retaliation

To prevail on a section 1983 claim for retaliation in violation of the First Amendment, Taylor must show "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013). Taylor claims defendants retaliated against him because he filed a civil rights lawsuit against Miller. Defendants do not dispute that Taylor engaged in a protected activity. "A prisoner has the right under the First Amendment to petition for redress of grievances . . . and conduct that retaliates against the exercise of a constitutionally protected right . . . is actionable even if the alleged retaliatory conduct does not itself rise to the level of a constitutional violation." Id. at 994 (alterations, quotation marks, and citation omitted); see also Haynes v. Stephenson, 588 F.3d 1152, 1155–56 (8th Cir. 2009) ("'The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity.'" (quoting Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007)). Defendants dispute that Taylor has shown adverse action and retaliatory motive, arguing primarily that he has failed to present any evidence of retaliatory motive.

"To avoid summary judgment, [Taylor] must submit 'affirmative evidence [of] a retaliatory motive.'" Lewis, 486 F.3d at 1029 (quoting Wilson v. Northcutt, 441 F.3d 586, 592 (8th Cir. 2006)). Though "summary judgment is not often appropriate when motive is at issue," see Sisneros v. Nix, 95 F.3d 749, 752 (8th Cir. 1996), summary judgment is appropriate even when motive is at issue if the plaintiff fails to "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998); see also Fender v. Bull, 166 Fed. Appx. 869, 874 (8th Cir. 2006) (citing Crawford-El for the proposition that "even when motive is a critical issue, summary judgment is appropriate if the plaintiff fails to" meet this burden); Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004) (explaining that though the causal connection between adverse action and protected activity is generally a jury question, "it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury" (quotation marks omitted)). A plaintiff's unsupported belief that officials retaliated against him at someone else's direction because he filed a lawsuit does not create a genuine issue of fact. See Taylor v. Phillips, 2014 WL 241441, at *5 (E.D. Mo. Jan. 22, 2014).

## Analysis

Taylor alleges Miller directed other Potosi prison officials to take adverse actions against him in retaliation for his prior lawsuit against Miller. Taylor's unsupported beliefs—that adverse actions by officials who have no apparent connection to his prior lawsuit must have been taken in retaliation for the lawsuit, that he "knows" Miller was directing retaliation against him, or that because the defendants work together and know each other, they must have conspired to retaliate against him—do not create a genuine issue of fact from which a jury could find retaliatory motive. See Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (explaining that speculative and conclusory allegations are insufficient to allow for an inference of retaliatory animus); Brown v. Hickman, 2015 WL 1097392, at *11 (W.D. Ark. Mar. 11, 2015) ("Because nearly every otherwise routine decision may potentially be viewed as a retaliatory act, it has been recognized that '[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.'" (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996))).

Taylor claims the retaliation started after Pruett notarized Taylor's signature on a settlement agreement for another case, as Pruett knew Miller and must have told him about the settlement, motivating Miller to try to dissuade Taylor from pursuing his lawsuit further. Pruett notarized Taylor's signature for the settlement

on May 16, 2012.  Doc. 38 ¶ 4; Doc. 31 at 22.  Taylor claims the first retaliatory actions against him were taken on August 13, 2012, followed by periodic events, committed by a variety of different officials, occurring intermittently through March 2013.  He argues the chronology of these events supports his claim that adverse actions were retaliatory.

Even if Pruett's knowledge of the settlement and acquaintance with Miller sufficed to support some inference of retaliatory motive, the interval of three months between Pruett notarizing the settlement and the beginning of the alleged retaliation would dispel that inference.  See Lewis, 486 F.3d at 1029 ("This lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of causal connection."); Kipp v. Mo. Hwy. & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (explaining that the interval of two months between protected activity and adverse action "so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link").  As a result, the chronology of these events alone does not satisfy Taylor's burden or present a genuine factual issue on retaliation.  See Kipp, 280 F.3d at 897. As discussed below, Taylor fails to present any additional evidence in support of any of his individual claims of retaliation, and as chronology alone does not support them, defendants are entitled to summary judgment on all claims.

### a. Miller: Television and headphones

Taylor claims Miller directed Jason Lee, a nonparty to this suit, to confiscate his television and directed Crawford to confiscate his headphones. He got both back after a few weeks. The parties agree that Taylor failed to exhaust his administrative remedies on these complaints. These claims must be dismissed, then, unless there is a genuine issue of fact as to whether the remedies were available to Taylor. See Ross, 136 S. Ct. at 1856. The Supreme Court in Ross identified three kinds of circumstances in which remedies may be considered unavailable: (1) when a procedure operates as a dead end, with "officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is so opaque that, in practice, ordinary prisoners cannot discern or navigate it; and (3) when prison officials thwart inmates from using the process "through machination, misrepresentation, or intimidation." Id. at 1859–60.

Defendants claim Taylor did not file an IRR on his television. Taylor claims he filed an IRR but abandoned it because, when he went to sign off on his television in September 2012, Miller was present and said, "[t]hat's the guy who is suing me," which Taylor took as an "unspoken threat" to further withhold his television if he did not abandon his IRR or quit pursuing his lawsuit. Doc. 27 ¶ 8–9; see also Doc. 31–2 at 13, 17. I doubt Miller's alleged comment would chill a person of ordinary firmness from pursuing his grievance against prison officials or

13

serve as the type of intimidation or threat that would render the grievance process unavailable.  Cf., e.g., Lewis, 486 F.3d at 1029 (prisoner's work assignment changes would not chill an inmate of ordinary firmness from filing grievances); Santiago, 707 F.3d at 992 (death threats issued by officer guarding the prisoner's cell would chill prisoner of ordinary firmness from engaging in grievance process). And Taylor does not allege that his television was taken again when he continued pursuing his lawsuit against Miller.  But even if Taylor's claims suffice to excuse his failure to exhaust, defendants are still entitled to summary judgment on this claim because Taylor failed to provide any affirmative evidence of retaliatory motive for the temporary confiscation of his television.

Taylor claims a non-party, Lee, confiscated his television and told Taylor he was directed to do so by the classification office but did not say who gave the direction or mention the lawsuit.[3]  Taylor surmises Miller must have told Lee to confiscate the television because Miller was part of the classification staff.  Taylor explains his television was confiscated because his property list showed he had two televisions when he was only permitted to have one, see Doc. 27 ¶ 8, and that he got his television back after a few weeks.  Id. ¶ 9.  Even if, as Taylor claims, prison officials failed to remove his prior television from his property list, resulting in

---

[3] Taylor alleged in his complaint that Crawford took the television, but he later claims—and testified in his deposition—that Lee took it.  It appears Taylor's mention of Crawford may be because Crawford was the property room sergeant at the time and took possession of the television while it was temporarily confiscated.

temporary confiscation of his new television until the error was fixed, he does not claim any retaliatory motive related to that failure. These facts do not support an inference of retaliatory motive. See Atkinson, 91 F.3d at 1129; Martin v. Hurley, 2015 WL 6750808, at *7 (E.D. Mo. Nov. 5, 2015) (concluding that when the only evidence in the record indicates the defendants had a non-retaliatory reason for taking the actions they took, there is no evidence from which a reasonable juror could find in favor of plaintiff and defendants are entitled to summary judgment).

Taylor also claims Crawford took his Koss headphones for four weeks at Miller's direction. Defendants agree Taylor filed an IRR on his headphones, but point out he accepted the response and did not file a grievance or grievance appeal. Taylor agrees he did not file a grievance or grievance appeal from the IRR but claims he failed to do so because staff members told him he would receive new headphones and he was satisfied with this response until it later became clear he would not receive new headphones. During the IRR process, staff members explained Taylor's headphones were confiscated because they had been mistakenly engraved with another inmate's number. They corrected the mistake and gave the headphones back to Taylor, who agreed to receive them with the mistaken and corrected engraving. See Doc. 23 ¶ 24; Doc. 23–9 at 2. Taylor claims that when he realized he would not get new headphones and would have to keep the altered

ones, he tried to submit another IRR, but Pruett told him it would be an abuse of the grievance process to file another IRR on the same issue, so he did not do so.

Taylor does not complain here that he did not receive new headphones and had to keep altered ones. He complains he was deprived of his headphones for a temporary period in retaliation for his prior lawsuit. As a result, even if prison officials did mislead Taylor by telling him he would receive new headphones, it does not necessarily follow that this information would excuse him from failing to exhaust his administrative remedies regarding the deprivation of his headphones. But again, even if it does, defendants are entitled to summary judgment on this claim because Taylor fails to provide any evidence of retaliatory motive.

Taylor claims Crawford told him classification instructed him to take the headphones but did not say who specifically told him to take them. Doc. 23 ¶ 21; Doc. 27 ¶ 10. Taylor provides no evidence that Crawford was impacted by his lawsuit or that Miller had anything to do with the confiscation of his headphones.[4] Rather, he asserts only that "[i]t would stand to reason that Miller directed

---

[4] During his deposition, it appeared at times that Taylor was also claiming his headphones were confiscated because he requested an IRR on the television the day before. But Taylor states in his statement of facts on this point that he was "confused as to what was being asked" during the deposition, and he maintains that Miller directed confiscation of his headphones and that the headphones were taken in retaliation for the lawsuit. See Doc. 27 ¶ 10. My analysis is limited to the claims Taylor has chosen to put forward, as a close examination of the extensive record submitted in this case demonstrates that Taylor's belief about who retaliated against him and for what reasons may have changed over time. See, e.g., Doc. 31–2 at 15–16 (letter from Taylor to the Attorney General's Office complaining that classification staff members Dillon and Bryan ordered guards to come take his television on August 13, 2012 in retaliation for his grievances, with no mention of Miller).

Crawford to confiscate Koss Headphones as Crawford and Miller admitted knowing each other." Doc. 27 ¶ 10. These speculative allegations do not support a claim of retaliation. The parties agree the headphones were mistakenly engraved with another prisoner's number, taken from Taylor, corrected, and returned after he agreed to accept them. See Doc. 23 ¶¶ 23–24; Doc. 27 ¶ 11. The only evidence in the record indicates the defendants had a different, valid reason for taking the actions they took, and defendants are entitled to summary judgment. See Martin, 2015 WL 6750808, at *7.

### b. Gravett: Legal documents and watch

Taylor claims Gravett confiscated some of his legal documents and damaged his watch during a cell search he conducted with another officer, Young, on October 2, 2012. Gravett denies removing legal documents or damaging any property during a search of Taylor's cell. Doc. 23 ¶ 28; Doc. 38 ¶ 13. Taylor submitted a Potosi cell search log that shows that on October 2, 2012, the common areas were searched; it does not indicate Taylor's cell was searched. See Doc. 31–2 at 22, Ex. 19. Taylor maintains the search occurred and claims, without support, that Miller authorized the search, though he does not claim Miller directed Gravett to retaliate against him.

Taylor filed an IRR about the cell search, but admits he listed the wrong date, writing October 8 instead of October 2 on the IRR. Gravett and Young filed

statements in response, stating they search many cells on a monthly basis and cannot say they did search the cell, but would report any property damage or removal. See Doc. 31–2 at 30–31, Exs. 22–23. While both statements indicate the date of the search in question was October 8, as Taylor indicated on his IRR, Taylor points out that Gravett's memo itself is dated September 9, 2012. See Doc. 31–2 at 30, Ex. 22. Taylor argues "Gravett and Pruett submitted the wrong dates to cover up Respondent's wrongdoings" and "it is more plausible to infer the cover up was to protect Miller who just been promoted and the only prison official Affiant had lawsuit against at that time was Miller this is why legal documents were confiscated and cell search never logged in." Doc. 27 ¶ 16.

Defendants claim the date on the memo was likely a typographical error, given that it was before the date listed in the memo for Taylor's cell search. As Gravett's memo correctly states that Taylor complained of a cell search on October 8, 2012, the inference Taylor suggests does not plausibly follow from the evidence on the record. Even if Gravett did search Taylor's cell on October 2 and remove or damage some of his property, Taylor has not provided any evidence of retaliation. As Taylor did not allege Gravett was involved in or affected by his previous litigation, does not provide evidence or even allege that Miller directed Gravett to retaliate against him, and does not provide any other evidence supporting an

inference of retaliatory motive, defendants are entitled to summary judgment on this claim.  See Atkinson, 91 F.3d at 1129.

### c.  Gravett and Johnson: Broken typewriter and postage stamps

Taylor claims that on October 29, 2012, while Gravett and Johnson were searching his cell, Johnson intentionally dropped his typewriter on the floor and started laughing.  He claims Gravett and Johnson also took seventy 46-cent postage stamps.  Taylor claims that several days before the search occurred, he saw Johnson talking to Miller's wife, a Potosi employee, in front of the gymnasium.

Taylor does not allege Gravett or Johnson were named in or affected by his lawsuit.  He does not claim to know what Johnson and Miller's wife discussed or give any reason to believe any conversation they may have had led to the search or the alleged damage to his property.  His speculation that Johnson retaliated against him for filing a lawsuit against Miller because Johnson spoke to Miller's wife is insufficient to support a claim of retaliation.  As a result, defendants are entitled to summary judgment on this claim.  See Atkinson, 91 F.3d at 1129.

### d.  Pruett: Typewriter

Taylor filed an IRR on his claims against Johnson and Gravett regarding the typewriter and stamps.[5]  See Doc. 23–12, Ex. K (PCC–12–01332).  He claims that

---

[5] In his statement of facts, Taylor claims that on October 31, 2012, he asked Pruett for an IRR regarding his dropped typewriter, but Pruett said "[s]he [referring to Johnson] didn't mean to drop your typewriter" and left without giving him an IRR.  Doc. 27 ¶ 31.  Pruett denies this

while his IRR was being processed, Pruett ordered him to bring his typewriter to the classification office for confiscation. Taylor alleges that he never got his typewriter back and that Miller was present when he delivered the typewriter.

On review of Taylor's claim and the evidence presented, it does not appear he is claiming Pruett took adverse action against him in confiscating the typewriter. Taylor's typewriter was confiscated because he filed a grievance reporting it damaged. Doc. 23 ¶ 53. Though defendants do not cite MDOC policy requiring confiscation of property reported damaged in an IRR, this explanation appears consistent with MDOC policy requiring investigation of prisoner complaints and evidence showing Potosi staff examined the typewriter to determine whether it had actually been broken. <u>See</u> Doc. 23–10 at 10–21 (describing grievance investigation and response process, including that the offender should provide whatever materials available to him and that in complaints about impounded or confiscated property, the property is held until the grievance process is finalized); Doc. 23–12, Ex. K (grievance file on typewriter).

In his statement of facts regarding this claim, Taylor complains that after the disposition of the grievance, he asked that his typewriter be mailed out for repairs, but neither Crawford (addressed below) or Savage (not named in this lawsuit)

---

occurred. Taylor did receive an IRR and was able to exhaust the grievance process on his claims against Johnson and Gravett. <u>See</u> Doc. 23–12, Ex. K. Taylor did not claim retaliation based on this alleged comment or obstruction with the grievance process; rather, he complains about not getting his typewriter back.

would allow him to do so. As Taylor's complaint really appears to be that Crawford refused to give his typewriter back or send it out for repairs after the grievance, not that Pruett initially confiscated it for investigation, Taylor has not claimed or shown any adverse action by Pruett. Even if he had, Taylor provides no evidence of retaliatory motive on Pruett's part. The fact that Miller may have been present when Taylor turned in his typewriter, without more, does not support an inference of retaliatory motive, particularly as the only evidence in the record shows officials examined the typewriter as part of the grievance process. Defendants are entitled to summary judgment on this claim.[6]

### e. Gravett: False conduct violations and stolen property

On December 7, 2012, Taylor alleges Gravett called him to the sallyport from his cell, where Taylor discussed an issue with some candy bars he had purchased from the canteen with another officer, Lambert, who is not named in this suit. As a result of Taylor's encounter with Lambert, he received two conduct violations which caused him to be confined to administrative segregation for more than 45 days. Taylor also alleges that Gravett let another inmate, Patrick Jones,

---

[6] Defendants also argue Taylor failed to exhaust this claim. Taylor points out he did file an IRR on confiscation of his typewriter, but officials denied the request as duplicative because he was currently in the appeal stage of his related grievance. Doc. 31–5, Ex. 43. As MDOC's grievance process does not require that a prisoner identify every prison official involved in an alleged violation and only requires prisoners to state the subject of the complaint, and as Taylor did file an IRR about confiscation of his typewriter, I will not dismiss for failure to exhaust based on his failure to file a separate IRR against Pruett. See Jones v. Bock, 549 U.S. 199, 219 (2007); Taylor v. Null, 2015 WL 1006093, at *2 (E.D. Mo. Mar. 5, 2015).

pack up Taylor's personal property and allowed Jones to steal some of it. Doc. 27 ¶ 35. Taylor exhausted his remedies regarding the incident in which he received conduct violations, but neither party provides an IRR regarding his claim of stolen property. See Doc. 23–14, Ex. M (grievance on conduct violations, PCC–12–01494). Defendants provide an affidavit from the grievance officer at Potosi, Robert Savage, who states that part of his assigned duties include the custody and control of all original grievances as they pertain to Potosi offenders. See Doc. 23–13, Ex. L. Savage states that, to the best of his knowledge, the grievances he produced are the only property claims filed by Taylor between August 2012 and March 2013. See id. None of these grievances discuss Taylor's claim that Gravett allowed another inmate to steal his property. As a result, defendants have shown Taylor failed to exhaust his claim regarding stolen property.[7]

Even if Taylor had exhausted this claim, defendants would still be entitled to summary judgment on both complaints against Gravett. First, defendants present unrefuted evidence indicating Gravett was neither assigned to Taylor's housing unit nor working when this incident occurred. See Doc. 23–14 at 13 (institutional violation report showing incident occurred around 12:55 pm on December 7,

---

[7] Taylor indicates in his statement of facts that he has attached a "Declaration" in opposition to Savage's affidavit "by not providing a complete Discovery," but the "Declaration" Taylor attached makes no mention of Savage's affidavit. See Doc. 28. Defendants also appear to indicate that Taylor tried to add his allegations about Jones stealing his personal property to his IRR about the conduct violation but was not permitted to do so. See Doc. 38 ¶ 38. But a review of the grievance indicates the property removal Taylor attempted to add to his IRR was removal of his coat and crockpot, which he alleges Crawford took. See Doc. 23–14 at 3.

2012); id. at 20 (statement in grievance file from Gravett that he was assigned to Housing Unit 4 on December 7, 2012 and was relieved from duty that day at 7:30 a.m.). Second, Taylor provides no affirmative evidence of retaliatory motive. Taylor claims, without support, that "the lawsuit against Miller moved these two prison officials [Gravett and Lambert] to retaliate against Affiant and to raise false and bogus CDVs [conduct violations] on Affiant and to place Affiant in the hole." Doc. 27 ¶ 34. This speculation does not support an inference of retaliatory motive.

Third, as to the conduct violations, Taylor does not allege that Gravett issued him the conduct violations, only that he called Taylor from his cell. Even if he showed Gravett was involved in issuing the conduct violations, "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." Bandy-Bey v. Crist, 578 F.3d 763, 766 (8th Cir. 2009) (quotation marks omitted). "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." Id. (quotation marks omitted). Defendants submitted an institutional violation report as part of Taylor's grievance file describing the incident that led to the conduct violation. Lambert reported that Taylor yelled and cursed at Lambert in front of other inmates during their discussion of the allegedly rotten candy bars. See Doc. 23–14 at 13. The

report indicates Taylor was found guilty of the violation, which Taylor does not dispute. Id. at 13–15. The reviewing staff in the grievance process also found that Taylor's behavior was "very inappropriate" and warranted issuance of a conduct violation for creating a disturbance. See id. at 2. As a result, defendants have shown "some evidence" Taylor actually committed a rule violation and are entitled to summary judgment on this claim.

### f. Crawford: Crockpot, 49ers coat, and typewriter

Taylor alleges that while he was confined to administrative segregation for the December 7 conduct violation, Crawford, the property room sergeant, confiscated his crockpot and 49ers coat and refused to return them to him after his release from segregation.[8] He also claims Crawford improperly refused to allow him to send these items out or send out his typewriter for repairs.

Taylor filed an IRR on his crockpot and coat. See Doc. 23–15. The response stated that per MDOC policy, an inmate is no longer permitted to retain grandfathered items if he commits a violation that results in assignment to administrative segregation. Defendants submitted a certified copy of MDOC policy IS22–1.1 Offender Authorized Personal Property. See Doc. 23–16. The policy states that offenders may retain items that are no longer authorized for

---

[8] Taylor also indicated in his complaint that Crawford took some typing ribbons, but he fails to further discuss or present evidence on the typing ribbons, and the relevant IRR and grievance only discuss and request return of or reimbursement for the crockpot and coat.

purchase by offenders but approved as grandfathered property so long as they satisfy established criteria. Id. at 12. The policy states that if an offender commits a violation that results in assignment to administrative segregation, he will no longer be permitted to retain any grandfathered items. See id. The grandfathered items list included crockpots (effective August 13, 2012) and personal coats (effective August 2003). See id. at 34–35; see also Doc. 23–15 at 19–22 (Potosi SOP 22–1.1 Offender Property Control Procedures). As a result, the evidence in the record shows Crawford followed prison policy in confiscating Taylor's crockpot and personal coat. Taylor complains that the conduct violations that led to his confinement in administrative segregation were false and thus his grandfathered property should not have been confiscated. As previously discussed, the conduct violation in question was upheld.

Taylor also alleges he gave Crawford postage to mail out his crockpot and 49ers coat and asked to send out his typewriter for repairs, but Crawford refused to let him send these items out. Regardless of what happened to these items, Taylor again provides no evidence at all of retaliatory motive. Defendants admit the typewriter was not sent out for repairs, but explain this was because officers concluded after investigation that the typewriter did not appear to be broken and was of minimal value. See Doc. 23–12; Doc. 38 ¶ 31. Even if Taylor should have been allowed to send out the typewriter, defendants' evidence provides a non-

retaliatory explanation for the fact that it was not sent out for repairs.  As Taylor provides no evidence that Crawford acted with a retaliatory motive, defendants are entitled to summary judgment on this claim.

### g. Miller and Johnson: Refusal to send to clothing issue for winter coat and false conduct violation

Taylor claims that sometime in March, after his 49ers coat was confiscated in January, he asked Miller to send him to clothing issue to get a new coat, but Miller refused his request.  Doc. 27 ¶ 49.  Taylor also alleges that on March 18, 2013, Johnson issued a false conduct violation against him for wearing a sweatshirt under his state-issued clothing.  Taylor does not point to a copy of the conduct violation in the record, but he admits the conduct violation against him was upheld.  Doc. 27 ¶ 50.  Taylor alleges he never received another coat.

Defendants argue Taylor failed to exhaust these claims because he never filed an IRR.  Taylor claims he wrote letters to Constituent Services about his winter coat but prison officials refused to process his IRRs.  Doc. 26 at 7.  Even if administrative remedies were unavailable to Taylor, excusing his failure to exhaust, he provides no evidence of adverse action or retaliatory motive.

Taylor provides no evidence suggesting Miller was responsible for sending Taylor to clothing issue or could stop him from getting a coat beyond his allegation that Miller refused one verbal request to go to clothing issue.  See Doc. 27 ¶ 49;

Doc. 39 ¶ 18.  Taylor himself submitted multiple exhibits demonstrating he wrote to other officials about his lack of a coat and they suggested he contact clothing issue to request one.  See, e.g., Doc. 39–1 at 13–16.  As previously discussed, the lack of temporal connection between Pruett notarizing Taylor's settlement agreement in May 2012 and this allegedly adverse action in March 2013 dispels any inference of retaliation on Miller's part, absent any other evidence suggesting Miller acted in retaliation against Taylor.  Taylor presents no evidence at all that Johnson acted with a retaliatory motive; rather, the only evidence in the record shows Johnson issued Taylor a conduct violation for violating the rules and that conduct violation was upheld.  See Bandy-Bey, 578 F.3d at 766.  Defendants are entitled to summary judgment on this claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment #[21] is **GRANTED**.  A separate judgment will issue.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of February, 2017.